**SO ORDERED.**

**SIGNED this 26 day of November, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

| | |
|---|---|
| **EAGLE CREEK SUBDIVISION, LLC** | **Case No. 08-04292-8-JRL** |
| **EAGLES TRACE, LLC** | **Case No. 08-04293-8-JRL** |
| **AUMOND GLEN, LLC** | **Case No. 08-04294-8-JRL** |
| **BACK CREEK FARMS SUBDIVISION, LLC** | **Case No. 08-04295-8-JRL** |
| **SADDLEBROOK SUBDIVISION, LLC** | **Case No. 08-04296-8-JRL** |
| **THE HEIGHTS SUBDIVISION, LLC** | **Case No. 08-06502-8-JRL** |
| **KELSEY GLEN, LLC** | **Case No. 08-06503-8-JRL** |
| **THE RAPIDS AT BELMEADE, LLC** | **Case No. 08-06504-8-JRL** |
| **WATER MILL, LLC** | **Case No. 08-06506-8-JRL** |
| **CHANDLER OAKS, LLC** | **Case No. 08-06507-8-JRL** |
| **MYERS MILL, LLC** | **Case No. 08-06508-8-JRL** |
| **RIVER CHASE SUBDIVISION, LLC** | **Case No. 08-06509-8-JRL** |
| **THE VILLAGE AT WINDSOR CREEK, LLC** | **Case No. 08-07020-8-JRL** |
| **LISMORE PARK, LLC** | **Case No. 08-07026-8-JRL** |
| **OLD TOWNE, LLC** | **Case No. 08-07170-8-JRL** |
| | **Chapter 11** |
| **DEBTORS.** | |

_____

**ORDER**

This case is before the court on the motion to substantively consolidate the debtors' cases filed by the committee of holders of junior deeds of trust and owners of tenancy-in-common interests. On November 10, 2008, the court conducted a hearing on this matter in Raleigh, North Carolina. This opinion provides the rationale for the oral ruling at the conclusion of the hearing

denying the motion.

## BACKGROUND

The debtors are limited liability companies managed by Landcraft Management, Inc. ("Landcraft"). The sole members of each debtor and the sole owners of Landcraft are J. Franklin Martin, Scott A. Stover, and Matthew A. McDonald. In addition to the debtors, other limited liability companies were formed by the same parties and are managed by Landcraft. Each of the debtors was created for the purpose of acquiring undeveloped tracts of land located in North Carolina or South Carolina, obtaining the necessary permits and approvals, developing the tracts as residential subdivision projects, and selling the lots to various builders for their subsequent construction and sale.

Landcraft follows a similar business plan for each subdivision project. Typically, Landcraft begins each project by creating a limited liability company ("LLC"), arranging for an acquisition and development loan with a bank, and contracting with one or more builders to purchase lots. Pursuant to these contracts, each builder agrees to make a cash deposit and supply a letter of credit to secure its agreement to purchase lots on a specific timetable. Based on this arrangement, the banks receive a first mortgage on property to be developed, while the builders sometimes receive a second mortgage securing their cash deposits. Subsequent to closing, Landcraft often solicits investments from individuals to provide additional capital. These investors receive either junior deeds of trust or undivided tenancy-in-common interests in the property being developed.

Landcraft has followed this business plan for approximately fifteen years. However, within the recent past, certain projects have suffered economic losses, delays, and financing difficulties. As a result, on June 27, 2008, Eagle Creek Subdivision, LLC, Eagles Trace, LLC, Back Creek Farms

Subdivision, LLC, Aumond Glen, LLC, and Saddlebrook Subdivision, LLC filed petitions for Chapter 11 relief.  Subsequently, on September 22, 2008, The Heights Subdivision, LLC, Kelsey Glen, LLC, The Rapids at Belmeade, LLC, Water Mill, LLC, Chandler Oaks, LLC, Myers Mill, LLC, and River Chase Subdivision, LLC filed for relief under Chapter 11.  Next, The Village at Windsor Creek, LLC and Lismore Park, LLC filed for Chapter 11 relief on October 9, 2008.  On October 15, 2008, Old Towne, LLC also filed for Chapter 11 relief.

The court authorized the appointment of a committee to represent individual investors holding certain junior deeds of trust and certain undivided tenancy-in-common interests in property being developed by the debtors (the "Committee").  On October 21, 2008, the Committee filed a motion to substantively consolidate the debtors' cases.  At hearing, the Committee requested that its motion be amended to exclude Eagle Creek Subdivision, LLC from substantive consolidation.[1]

## DISCUSSION

The Committee contends that the debtors' cases should be substantively consolidated because the debtors' reorganization efforts are unlikely to succeed individually and will result in excessive costs and little return for secured and unsecured creditors other than the banks holding first priority liens.  Moreover, the Committee asserts that Landcraft has treated the debtors as affiliates, rather than as separate legal entities, to such an extent that the debtors have no separate existence and are not adequately capitalized.

The court has authority to grant substantive consolidation of separate bankruptcy estates pursuant to its general equitable powers under § 105 of the Bankruptcy Code.  See Union Sav. Bank

---

[1] Somewhat ironically, Eagle Creek is the only debtor with property in this district.  The other cases involve property throughout North and South Carolina, and were filed here as affiliates of Eagle Creek.

v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 518 (2d Cir. 1988). In determining whether substantive consolidation is necessary, this court has applied a two-factor test developed by the Second Circuit. See In re Convalescent Ctr. of Roanoke Rapids, Inc., Case No. 06-00310-8-RDD (Bankr. E.D.N.C. Aug. 7, 2006). Under this test, the court considers (i) "whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, . . . or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." In re Convalescent Ctr. at 5 (citing In re Augie/Restivo Baking Co., 860 F.2d 515, 518 (2d Cir. 1988)). Because it forces creditors of one debtor to assume an equal priority position with creditors of less solvent debtors, substantive consolidation should be used "sparingly." In re Augie/Restivo Baking Co., 860 F.2d at 518 (citing Chem. Bank New York Trust Co. v. Kheel, 369 F.2d 845, 847 (2d Cir. 1966)).

In support of substantive consolidation, a financial consultant hired by the Committee, James Neil, testified before the court. The Committee hired Mr. Neil to analyze the financial records of Landcraft and the five debtors who initially filed for bankruptcy protection. After conducting his analysis, Mr. Neil produced detailed reports addressing each debtor's bank account which highlighted the dates and amounts of every transfer, disbursement and receipt of funds between 2005 and 2008. At hearing, Mr. Neil established that during this period of time, the debtors transferred money to and from Landcraft on a regular basis. Additionally, Landcraft transferred money into each debtor's bank account to be used to pay contractors. Mr. Neil testified that it was exceedingly difficult, if not impossible, to trace funds once they were transferred from individual debtors to Landcraft's sole bank account. Mr. Neil further established that individual investors typically provided financing by writing checks which were made payable to a particular debtor. Each debtor

then deposited its checks into its individual bank account. However, Mr. Neil's analysis reflected that many of these checks were subsequently transferred to other debtors for the purpose of funding other subdivisions.

Also testifying at hearing was Scott Stover, President of Landcraft and member of each of the debtors. Mr. Stover established that the primary source of funding for each project was an acquisition and development loan from a bank. The purpose of each bank loan was to fund the purchase of land and construction going forward. In addition, each LLC contracted with prospective builders to purchase lots and provide cash deposits to be applied at closing. In addition to the banks' first priority loans and builders' cash deposits, Landcraft solicited financing from individual investors who received secondary liens on a particular project. Mr. Stover also established that principals of Landcraft sometimes contributed capital to the projects. Mr. Stover further established at hearing that the frequent transfer of funds out of certain subdivision projects and into Landcraft resulted in Landcraft owing approximately $15,142,986.38 to the debtors and their non-debtor affiliates. Mr. Stover also admitted that Landcraft has no real estate or other assets from which it can repay its indebtedness to each LLC.

In response to the motion to substantively consolidate, the debtors argue that a substantive consolidation of their cases is neither appropriate nor feasible under the circumstances. Furthermore, the debtors contend that the Committee cannot satisfy the two-factor test for substantive consolidation applied by this court in In re Convalescent Center. First, the debtors argue that their cases should remain separate because their respective banks, contractors, and unsecured creditors dealt separately with each of the debtors. Secondly, the debtors assert that their affairs are not entangled because each debtor uses a separate bank account, Employer ID Number, place of

business and contractor.

Although the debtors believe their cases should remain separate, the debtors agree with the Committee to the extent that the individual investors' claims should be pooled and all administrative claims should be consolidated. The debtors support a consolidation of the individual investors' claims because these investments overlap among the various subdivisions. Additionally, the debtors argue that administrative claims should be consolidated as most of the professionals employed by the debtors are the same in each case.

Several of the banks holding first liens on the debtors' real property also assert that the Committee cannot satisfy the test for substantive consolidation. SunTrust Bank ("SunTrust") is a secured creditor of Aumond Glen, LLC and Saddlebrook Subdivision, LLC and argues that it extended loans based on the circumstances of each debtor's financial information, rather than the financial status of the debtors as a whole. SunTrust also contends that substantive consolidation is inappropriate because the creditors vary with respect to each project. Additionally, SunTrust argues that the debtors held separate bank accounts and that it was Landcraft, and not the debtors, who commingled funds. Like SunTrust, KeyBank contends that it relied on the separate corporate existence of each borrower in making loans to Back Creek Farms Subdivision, LLC and River Chase Subdivision, LLC. KeyBank also asserts that the facts do not support substantive consolidation because the debtors do not share common creditors.

In addition, several of the secured creditors object to the Committee's motion because their rights would be prejudiced by a substantive consolidation. At hearing, First Tennessee Bank argued that if it foreclosed on its rights in the Water Mill property and encountered a deficiency, its recovery would be reduced significantly if spread out among the unsecured creditors of every debtor.

Wachovia Bank, the holder of first liens on real property owned by The Rapids at Belmeade, LLC, Chandler Oaks, LLC, and Myers Mill, LLC, agreed that a substantive consolidation would unfairly place the rights of second deed holders ahead of a bank's deficiency claim.

The Bankruptcy Administrator also objects to substantive consolidation. At hearing, the Bankruptcy Administrator asserted that the Committee's request to separate Eagle Creek Subdivision, LLC from the other debtors was strong evidence that the debtors' cases were not so hopelessly entangled as to necessitate substantive consolidation.

Substantive consolidation is extraordinary relief that is not expressly authorized by the Bankruptcy Code. Rather, such relief is authorized pursuant to the court's general powers under § 105 but is reserved for the rare situation in which administration of a set of cases would unjustly disturb the rigid corporate boundaries that separate them. See In re Fas Mart Convenience Stores, Inc., 320 B.R. 587, 594 (Bankr. E.D. Va. 2004) ("[s]ubstantive consolidation should be used sparingly to prevent injustice."). This court has considered two critical factors in determining whether the substantive consolidation of estates is appropriate. See In re Convalescent Ctr., Case No. 06-00310-8-RDD (Bankr. E.D.N.C. Aug. 7, 2006). Accordingly, the Committee must establish that (i) "creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit," or (ii) "the affairs of the debtors are so entangled that consolidation will benefit all creditors." In re Convalescent Ctr. at 5.

First, it is clear that creditors, save perhaps for the individual investors, dealt with the debtors as single purpose entities in widely disparate areas of the southeast. Mr. Stover established that each bank issued an acquisition and development loan to an LLC on an individual basis. Furthermore, the record reflects that the banks did not cross-collateralize between projects. Similarly, builders

7

contracted with the entities individually when entering into lot purchase agreements. These creditors either did not know or did not care that the same business plan was being run in other places. Thus, substantive consolidation is not appropriate under the first part of the test.

Second, the record is fairly accurate in establishing how funds were disbursed among the debtors. At hearing, Mr. Neil provided a detailed report of the financial records of the five initial debtors, including the source and distribution of every dollar that flowed through the debtors' bank accounts over a three-year period. Based on the record, the court sees no evidence of any money inappropriately disappearing or otherwise being applied outside of Landcraft's business model. In fact, the record shows that the principals of the debtors poured personal funds into these projects in an attempt to keep them afloat. Additionally, the Committee's request to exclude one of the debtors from substantive consolidation undermines its own assertion that the debtors' assets are inseparable. Whether the creditors of one debtor may ultimately have a claim against the assets of another debtor because of the intermingling of funds is a difficult legal issue reserved for another day; nonetheless, the financial records do not present the degree of hopeless entanglement on which to base substantive consolidation.

Based on the foregoing, the court DENIES the Committee's motion to substantively consolidate the debtors' cases. The court recognizes that there may be an equitable basis for the investors to bring a consolidated claim that applies to each case in the same way. However, responsibility falls on the Committee to assert such a claim. Furthermore, an administrative consolidation would result in the impermissible redistribution of funds from solvent cases toward the payment of administrative expenses in insolvent cases. The court is unwilling to authorize the

consolidation of administrative claims without the express consent of the parties.

"END OF DOCUMENT"