**SO ORDERED.**

**SIGNED this 03 day of December, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

**EAGLE CREEK SUBDIVISION, LLC,**

      Debtor.                                                  CASE NO. 08-04292-8-JRL
                                                                          Chapter 11
_____

**ORDER**

This case is before the court on the debtor's motion to assume executory contracts with Eastwood Construction Co., Inc. ("Eastwood"). The court conducted a hearing on this matter in Raleigh, North Carolina on October 31 and November 3, 2008. This order confirms and provides the rationale for the oral ruling at the conclusion of the hearing denying the motion.

The debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 27, 2008. The debtor is a North Carolina limited liability company located in Brunswick County. Landcraft Management, LLC ("Landcraft") is the founder and manager of the debtor and various other limited liability companies throughout North and South Carolina. The sole members of the debtor and the sole owners of Landcraft are J. Franklin Martin, Scott A. Stover, and Matthew A. McDonald. The debtor is in the process of developing a subdivision known as Eagle Creek and is preparing a portion of lots for sale to Eastwood. Eastwood is a real estate

developer and builder that was a party to two contracts to purchase residential lots from the debtor. Since 2002, Eastwood has contracted to take down lots in more than 20 subdivisions owned by entities managed by Landcraft.

Landcraft initiated the Eagle Creek project by contracting with Eastwood to take down lots. Eastwood agreed to purchase 165 lots under a contract dated October 4, 2006, and 104 lots under a contract dated December 8, 2006 (the "Contracts"). As security for its agreement to take down lots, Eastwood agreed to provide cash deposits and letters of credit in the total amount of $1,953,225.00. Landcraft subsequently assigned the Contracts to the debtor. In addition, the debtor obtained financing for the Eagle Creek project by arranging for an acquisition and development loan with Waccamaw Bank ("Waccamaw"). On January 17, 2007, the debtor and Waccamaw entered into two loan agreements in which Waccamaw agreed to provide approximately $14,100,000.00 for the purpose of constructing improvements on the Eagle Creek project. In return, the debtor executed a promissory note and deed of trust securing Waccamaw's loan.

According to the terms of the Contracts, the debtor was required to use its best efforts to complete at least 50 lots by March 31, 2008, and if the lots were not completed by June 30, 2008, Eastwood was entitled to terminate the Contracts, "time being of the essence." As of June 25, 2008, the debtor had failed to complete any lots. Also on June 25, 2008, and five days before performance was due, Eastwood delivered to the debtor written notice of termination of the Contracts. The debtor filed for Chapter 11 bankruptcy protection on June 27, 2008, and now seeks to assume the Contracts with Eastwood.

**DISCUSSION**

Eastwood objects to the debtor's motion to assume the Contracts on several grounds. First, Eastwood contends that the debtor is precluded from assuming the Contracts because Eastwood terminated them two days before the debtor filed for Chapter 11 bankruptcy. As a result, Eastwood argues, the debtor was unable to assume the Contracts when it filed its petition. Alternatively, Eastwood asserts that the debtor may not assume the Contracts because the debtor was in default as to a material provision requiring that lots be completed by June 30, 2008. At hearing, Eastwood also asserted that the debtor could not assume the Contracts because the debtor allegedly transferred all of its rights in the Contracts to Waccamaw.

**1. Eastwood terminated the Contracts prior to petition**

Eastwood asserts that the debtor may not assume the Contracts because the Contracts were not executory at the time the debtor filed for bankruptcy. Eastwood contends that the Contracts are not executory because it terminated the parties' obligations to perform prior to the petition date. Eastwood further contends that it rightfully exercised its option to terminate the Contracts in advance of the deadline for performance because the debtor failed to demonstrate it could deliver lots on time, time being of the essence.

The Bankruptcy Code permits a debtor-in-possession to assume an executory contract, subject to the court's approval. 11 U.S.C. § 365(a). An executory contract is a contract "on which performance remains due to some extent on both sides." 3 Collier on Bankruptcy ¶ 365.02[1] (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. Rev. 2007). It follows that a debtor-in-possession may not assume a contract that has already been terminated according to its terms under nonbankruptcy law. See Collier on Bankruptcy at ¶ 365.05[4]. Under North

Carolina law, a party may terminate a contract when, *inter alia*, the other party has committed an anticipatory repudiation.  See Dixon v. Kinser, 54 N.C. App. 94, 101, 282 S.E.2d 529, 534 (1981), disc. rev. denied, 304 N.C. 725, 288 S.E.2d 805 (1982) ("[w]hen a party to a contract gives notice that he will not honor the contract, the other party to the contract is no longer required to make a tender or otherwise to perform under the contract because of the anticipatory breach of the first party.").  Conduct evidencing an anticipatory repudiation arises when a party demonstrates a "positive, distinct, unequivocal, and absolute refusal" to perform the contract when performance becomes due.  Gordon v. Howard, 94 N.C. App. 149, 152, 379 S.E.2d 674, 676 (1989) (citing Messer v. Laurel Hill Assocs., 93 N.C. App. 439, 378 S.E.2d 220, 223 (1989).

In support of Eastwood's argument, two Eastwood employees testified before the court.  Joe Dority, Vice President of Eastwood, negotiated the terms of the Contracts with Landcraft.  Mr. Dority established that the Contracts required the debtor to use best efforts to complete a total of 50 lots by March 31, 2008.  In addition, the Contracts each imposed a final deadline of June 30, 2008 and provided that "[i]n the event Seller has not fully completed at least [50] lots . . . on or before June 30, 2008, *time being of the essence*, the Purchaser shall at its option terminate this Contract . . . ." (emphasis added).  Chris Day, who was President of Eastwood's coastal division at the time, also testified before the court.  Mr. Day established that he was responsible for supervising Eastwood's interest in the Eagle Creek project.  Mr. Day further established that he met with representatives of Landcraft and the debtor on at least three occasions between July 2007 and April 2008.  During these meetings, Mr. Day expressed his concerns about the lack of development on the Eagle Creek site and stressed that time was of the essence.

In June 2008, and shortly before the deadline for completing lots, both Mr. Dority and

Mr. Day visited the Eagle Creek site.  At hearing, Mr. Dority established that as of June 19, 2008, the Eagle Creek site lacked paved roads and curbs, and that portions of the site suffered from erosion.  Mr. Dority further established that the general contractor, A.O. Hardee and Sons ("Hardee"), was no longer working on the project because the debtor failed to pay Hardee a $904,000.00 invoice for work performed.  Mr. Day similarly observed that no paving or curbs were in place and no one was working on the site as of June 2008.  Based on the amount of work remaining on the project in June 2008, Mr. Dority estimated that it would take an additional 8-16 weeks for the debtor to complete the requisite number of lots for delivery to Eastwood.  Mr. Day agreed that no lots could be finished by June 30, 2008.

Based on the lack of activity on the Eagle Creek site, Eastwood sent a notice of termination of the Contracts to Landcraft on June 25, 2008.  At hearing, counsel for Eastwood produced the notice of termination, dated June 25, 2008 and signed by Joseph K. Stewart, President of Eastwood.  Mr. Dority established that the purpose of the letter was to notify Landcraft that Eastwood was terminating the Contracts and demanding the return of its cash deposits and letters of credit worth approximately $1,953,225.00.  Eastwood alleges that it exercised its right to terminate the Contracts on June 25, 2008 after the debtor demonstrated that it would fail to complete lots by June 30, 2008, time being of the essence.  Accordingly, Eastwood asserts that it rightfully terminated the Contracts prior to the debtor's petition date and that the debtor is precluded from assuming the Contracts

In response to Eastwood's argument, the debtor contends that Eastwood's notice of termination failed to extinguish the parties' obligations under the Contracts.  Specifically, the debtor alleges that the parties' prior course of dealing precluded Eastwood from terminating the

Contracts.  Scott Stover, chief financial officer of Landcraft and member of the debtor, testified on the debtor's behalf.  Mr. Stover established that Landcraft and Eastwood were parties to more than 20 lot purchase agreements in which Landcraft contracted to deliver lots to Eastwood by a certain date.  In each case, Mr. Stover established that Landcraft failed to deliver the requisite number of lots on time.  Specifically, Mr. Stover established that lots in these earlier projects were delivered to Eastwood between 32 and 413 days late.  Despite Landcraft's failure to deliver lots on time, Mr. Stover established that Eastwood typically accepted lots once they were finally delivered.  Thus, the debtor contends that its inability to meet the June 30, 2008 deadline did not constitute an anticipatory breach that would justify Eastwood's decision to terminate the Contracts.

The court disagrees with the debtor's contentions and finds that Eastwood's termination letter was effective in extinguishing Eastwood's obligation to purchase lots.  Although Eastwood sent its notice of termination five days prematurely, the evidence before the court clearly shows that under no circumstances could the debtor meet the June 30, 2008 deadline for completing lots.  Mr. Dority and Mr. Day established that as of June 19, 2008, the Eagle Creek site was devoid of essential features such as paving, curbs, and contractors.  In addition, Mr. Stover admitted on cross-examination that the debtor could not meet the June 30, 2008 deadline.  Furthermore, the Contracts provided in unambiguous terms that Eastwood possessed the option to terminate the Contracts upon the debtor's failure to meet this deadline, time being of the essence.  The debtor's argument that Eastwood agreed to extend the deadline for completion of lots in past Landcraft-affiliated projects fails to overcome Eastwood's consistent refusal to extend the debtor's deadline in this case.  Further, the court is unaware of any principle of

6

contract law that allows prior conduct between affiliated parties to serve as the basis for a parol modification of a subsequently-executed contract with unambiguous terms. Because the record reflects that performance was objectively impossible, the court finds that Eastwood's notice of termination was effective as of June 25, 2008. Therefore, the debtor cannot assume the Contracts because they were terminated prior to the date of petition.

**2. The debtor cannot cure a material default as required under § 365(b)(1)**

Even if the Contracts were executory on the date of petition, Eastwood argues that the debtor may not assume the Contracts because the debtor cannot cure a material default. As explained above, the Bankruptcy Code allows a Chapter 11 debtor to assume an executory contract to which it is a party, subject to the court's approval. 11 U.S.C. § 365(a). However, if the debtor has defaulted on its obligations under an executory contract, the debtor generally may not assume such contract unless the debtor cures the default, compensates any party to the contract who incurred a pecuniary loss resulting from such default, and provides adequate assurance of future performance under the executory contract. Id. § 365(b)(1)(A)-©.[1] Here, Eastwood contends that the debtor's failure to complete lots by June 30, 2008 constituted a material and non-monetary default which cannot be cured.

Courts in other circuits have considered whether a debtor is precluded from assuming an executory contract under § 365(b) after committing a non-monetary default that cannot be cured. See In re Claremont Acquisition Corp., Inc., 113 F.3d 1029, 1033 (9th Cir. 1997) (debtor's failure to operate a car dealership for seven consecutive business days constituted a non-

---

[1] Section 365(b)(2) provides exceptions under which the debtor is not required to cure a default, but these exceptions were not argued by the debtor and are not applicable here.

monetary default which was a historical fact that could not be cured); <u>In re New Breed Realty Enters., Inc.</u>, 278 B.R. 314, 320 (Bankr. E.D.N.Y. 2002) (debtor failed to close a sale pursuant to a time of the essence closing date, resulting in a non-monetary default which was a historical fact unable to be cured); <u>In re Williams</u>, 299 B.R. 684 (Bankr. S.D. Ga. 2003) (debtor's use of a leased truck in the course of his employment was a historical fact that could not be altered). Many courts also require that the default must be material or cause substantial economic detriment before a debtor is precluded from assuming an executory contract.  <u>See</u> <u>In re Joshua Slocum Ltd.</u>, 922 F.2d 1081, 1092 (3d Cir. 1990); <u>In re New Breed Realty Enters., Inc.</u>, 278 B.R. at 321 ("the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates the defaulting party's right to enforce the contract.").

   In the case at bar, Eastwood asserts that the debtor may not assume the Contracts under § 365 because the debtor committed a material and non-monetary default that cannot be cured. Eastwood argues that the debtor's failure to complete lots by June 30, 2008 constituted a non-monetary default that became impossible to cure once the deadline expired.  Eastwood also contends that the June 30, 2008 deadline for completing lots was a material provision of the Contracts.  At hearing, Mr. Dority established that he negotiated on behalf of Eastwood for the June 30, 2008 deadline and time is of the essence provisions within the Contracts.  Mr. Dority further established that Eastwood invested significant resources into the Eagle Creek project by opening an office in the area, contacting subcontractors to perform work on the property, and advertising the property with the help of real estate brokers.  Mr. Day established that the June 30, 2008 deadline was important to Eastwood because the real estate market in Brunswick

8

County peaks during the summer tourist season and Eastwood relied on the delivery of lots that summer. Thus, Eastwood contends that the debtor's default was material and precludes the debtor from assuming the Contracts.

In response, the debtor argues that it did not commit a material default. First, the debtor asserts that the deadline is not material because Eastwood has consistently allowed Landcraft to extend the deadline for completing lots in past projects. Alternatively, the debtor argues that Eastwood has not suffered a substantial economic detriment as a result of the debtor's failure to complete lots by June 30, 2008. In support of the debtor's argument, Mr. Stover established that the debtor has funding in place to continue construction of the project and predicted that the requisite number of lots could be completed within 3-4 weeks from the date of hearing. The debtor further contends that its alleged ability to cure default within one month is reasonable when compared to the six-year duration of the Contracts.

The court disagrees with the debtor's contentions and finds that the debtor's inability to complete lots by June 30, 2008 constituted a material and non-monetary default which the debtor cannot cure. The debtor failed to meet its June 30, 2008 deadline for completing lots and is still unable to deliver lots more than four months later. In the interim, Eastwood closed its coastal division and ceased marketing in the area. The evidence shows that in June 2008 the debtor was in woeful shape, as the bank had declared the debtor in default and the general contractor had walked off the property. It follows that the debtor committed a non-monetary default that it is unable to cure. Additionally, the court finds that the debtor's default was material due to the seasonal nature of the area's real estate market, the resources expended by Eastwood in marketing the property, and Mr. Day's repeated attempts to seek assurances from the debtor that

the deadline would be met. Because it is unable to cure a material default, the debtor is precluded under § 365(b)(1) from assuming the Contracts.

3. Whether the debtor transferred its rights under the Contracts to Waccamaw upon default

Alternatively, Eastwood argued at hearing that the debtor cannot assume the Contracts because it transferred its rights under the Contracts to Waccamaw when it defaulted on its loan obligations. At hearing, Eastwood produced a notice of default from Waccamaw dated May 8, 2008. According to Waccamaw's letter, the debtor was in default for, *inter alia*, failing to use Waccamaw's loan advances to pay Hardee, failing to apply all loan proceeds toward the debtor's business, and failing to obtain effective lien waivers. Eastwood also produced a Collateral Assignment and Security Agreement signed by Waccamaw and the debtor. On cross-examination, Scott Stover, a member of the debtor, established that this agreement authorized Waccamaw to exercise the rights of the debtor upon the event of default. Eastwood contends that according to this agreement, the debtor's rights under the Contracts were transferred to Waccamaw upon delivery of the notice of default.

In response to this argument, the Committee of Noteholders and Tenancy-in-Common Interests (the "Committee") asserted at hearing that the Collateral Assignment and Security Agreement at issue merely appointed Waccamaw as the debtor's attorney-in-fact upon an event of default. Thus, the Committee argues that although the agreement allows Waccamaw to act on the debtor's behalf, it fails to relieve the debtor's estate of its ownership rights in the Contracts. Also at hearing, Waccamaw supported the Committee's position that the debtor had retained the ability to assume the Contracts.

The court agrees with the Committee and finds that the Collateral Assignment and

Security Agreement between Waccamaw and the debtor does not, on its own, preclude the debtor from assuming the Contracts under § 365.

Based on the foregoing, the debtor's motion to assume executory contracts is DENIED. The debtor is incapable of assuming the contracts under § 365(a) because Eastwood effectively terminated the contracts prior to the date of petition. Alternatively, § 365(b)(1) precludes the debtor from assuming the contracts at issue because it committed a non-monetary and material default that it cannot cure.

"END OF DOCUMENT"