**SO ORDERED.**

**SIGNED this 09 day of March, 2009.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| EAGLE CREEK SUBDIVISION, LLC | Case No. 08-04292-8-JRL |
| EAGLES TRACE, LLC | Case No. 08-04293-8-JRL |
| AUMOND GLEN, LLC | Case No. 08-04294-8-JRL |
| BACK CREEK FARMS SUBDIVISION, LLC | Case No. 08-04295-8-JRL |
| SADDLEBROOK SUBDIVISION, LLC | Case No. 08-04296-8-JRL |
| THE HEIGHTS SUBDIVISION, LLC | Case No. 08-06502-8-JRL |
| KELSEY GLEN, LLC | Case No. 08-06503-8-JRL |
| THE RAPIDS AT BELMEADE, LLC | Case No. 08-06504-8-JRL |
| WATER MILL, LLC | Case No. 08-06506-8-JRL |
| CHANDLER OAKS, LLC | Case No. 08-06507-8-JRL |
| MYERS MILL, LLC | Case No. 08-06508-8-JRL |
| RIVER CHASE SUBDIVISION, LLC | Case No. 08-06509-8-JRL |
| THE VILLAGE AT WINDSOR CREEK, LLC | Case No. 08-07020-8-JRL |
| LISMORE PARK, LLC | Case No. 08-07026-8-JRL |
| OLD TOWNE, LLC | Case No. 08-07170-8-JRL |
| CALEDONIA SUBDIVISION, LLC | Case No. 08-07535-8-JRL |
| | **Chapter 11** |

DEBTORS.

_____

**ORDER**

This case is before the court on the motion for appointment of a trustee filed by the committee of holders of junior deeds of trust and owners of tenancy-in-common interests (the "Committee"). On February 11, 2009, the court conducted a hearing on this matter in Raleigh, North Carolina. This order confirms and provides the rationale for the oral ruling at the conclusion

of the hearing allowing the Committee's motion.

## BACKGROUND

The debtors are limited liability companies managed by Landcraft Management, LLC. ("Landcraft"). The sole members of each debtor and the sole owners of Landcraft are J. Franklin Martin, Scott A. Stover, and Matthew A. McDonald. Landcraft manages the debtors and other non-debtor entities formed by the same parties for the purpose of developing residential subdivisions (collectively, the "Subdivisions"). Each of the debtors was created for the purpose of acquiring undeveloped tracts of land located in North or South Carolina, obtaining the necessary permits and approvals, developing the tracts as residential subdivision projects, and selling the lots to various builders for their subsequent construction and sale.

Landcraft follows a similar business plan for each subdivision project. It begins each project by creating a limited liability company, arranging for an acquisition and development loan with a construction lender, and contracting with one or more builders to purchase lots. Typically, a bank finances development and receives a first mortgage on property to be developed. Subsequent to closing, Landcraft often solicits investments from individuals to provide additional capital (the "Investors"). These Investors receive either junior deeds of trust or undivided tenancy-in-common interests in the property being developed. The Investors are represented by the Committee.

Landcraft followed this business plan for approximately fifteen years. However, within the recent past, certain projects suffered economic losses, delays, and financing difficulties. As a result, many of the Subdivisions began filing for bankruptcy in 2008. On June 27, 2008, Eagle Creek Subdivision, LLC, Eagles Trace, LLC, Back Creek Farms Subdivision, LLC, Aumond Glen, LLC, and Saddlebrook Subdivision, LLC filed petitions for Chapter 11 relief.

Subsequently, on September 22, 2008, The Heights Subdivision, LLC, Kelsey Glen, LLC, The Rapids at Belmeade, LLC, Water Mill, LLC, Chandler Oaks, LLC, Myers Mill, LLC, and River Chase Subdivision, LLC filed for relief under Chapter 11.  Next, The Village at Windsor Creek, LLC and Lismore Park, LLC filed for Chapter 11 relief on October 9, 2008.  On October 15, 2008, Old Towne, LLC also filed for Chapter 11 relief.  Caledonia Subdivision, LLC filed a Chapter 11 petition on October 29, 2008.

On February 2, 2009, the Committee moved for the appointment of a trustee.

## **DISCUSSION**

Section 1104 of the Bankruptcy Code allows the court to appoint a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case . . . ."  11 U.S.C. § 1104(a)(1).  The appointment of a trustee in a Chapter 11 case is an extraordinary remedy, and there is a strong presumption in favor of allowing the debtor to remain in possession absent the showing of need for a trustee.  In re Heck's Props., 151 B.R. 739, 756 (S.D. W. Va. 1992) (citing Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 241 (4th Cir. 1987)).  The court has discretionary authority to determine whether conduct rises to the level of "cause."  Dalkon Shield, 828 F.2d at 242.  For the reasons that follow, the court finds that cause exists and the appointment of a trustee is warranted.

First, the court finds that Landcraft was dishonest in its accounting.  Generally, the court must narrow its focus to the actions of current management when investigating cause for appointment of a trustee.  7 Collier on Bankruptcy ¶ 1104.02[3][b][ii] (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. Rev. 2007).  However, when current management has been tainted by the misdeeds of prior management, the court may also consider the actions of prior management.

3

<u>Id.</u>  James E. Neal, an expert in accounting who reviewed the accounts of the debtors and Landcraft, testified on behalf of the Committee.  At hearing, Mr. Neal established that the Investors typically wrote checks payable to specific Subdivisions that were either transferred or deposited directly into Landcraft's bank account.  Similarly, funds from draws on construction loans were deposited into the debtors' bank accounts but subsequently transferred to Landcraft's account.  Mr. Neal further established that in approximately 2002, Landcraft was formed as a result of a split from Landcraft Properties, Inc.  In 2004, Landcraft and Landcraft Properties, Inc. began separating their financial statements.  Since at least 2004, Mr. Neal established that Landcraft regularly disbursed funds from its account to various accounts owned by the owners of the Subdivisions and Landcraft Properties, Inc.  Landcraft accounted for these disbursed funds as assets in the form of accounts receivable.  In fact, Landcraft's accounts receivable steadily increased from $6,437,820.37 at the beginning of 2005 to $22,427,383.80 by the end of 2007 and represented its second-largest asset.  However, Mr. Neal established that these "assets" were illusory because Landcraft failed to account for the debt resulting from these disbursements and because Landcraft did not expect the accounts receivable to be collected.  Thus, Landcraft misled the Investors and construction lenders into believing that it was profitable when in reality the company had been insolvent since 2004.

      Second, the court finds that Landcraft demonstrated patent dishonesty in the marketing and soliciting of Investors.  At hearing, John L. Sullivan, a note holder and tenancy-in-common owner in several of the Subdivisions and chairman of the Committee, testified on behalf of the Committee.  Mr. Sullivan established through powerful testimony that most Investors carefully selected specific Subdivisions in which to invest.  Importantly, the Investors were led to believe that their money would be applied only toward the Subdivisions selected.  Mr. Sullivan

4

established that he would not have invested in a particular Subdivision if he knew his funds would be interspersed among other Subdivisions. Additionally, Mr. Neal tracked the Investors' funds and established that the majority of these funds were transferred to Landcraft's bank account and subsequently disbursed to other Subdivisions. As a result, funds earmarked for specific Subdivisions were diverted by Landcraft to other Subdivisions without the knowledge or authorization of the Investors.

The debtors argue that loan participation agreements between the Investors and Landcraft authorized Landcraft to use Investors' funds to finance non-selected Subdivisions. At hearing, the debtors called attention to a specific provision common among the loan participation agreements, which stated, "Developer desires to borrow . . . additional loan proceeds from the Lenders to be used as working capital for the Developer *and for other entities affiliated with the Developer*." Loan Participation Agreement, Statement of Purpose, p. 1, ¶ 1 (emphasis added). The debtors argue that this provision gave Landcraft permission to use Investors' money to fund other Subdivisions. However, Mr. Sullivan established that Landcraft never explained this provision to him and that he understood that "entities affiliated with the Developer" referred to subcontractors and accountants within a particular project. The court finds that this ambiguous provision is unable to overcome credible testimony by Mr. Sullivan and Mr. Neal that Landcraft misled Investors by commingling funds for use in other Subdivisions. Even taken at face value, this provision would not have authorized funds provided for developments since 2004 to have been transferred to Landcraft Properties, Inc., as routinely happened, as these later developments were in no way affiliated with the prior company.

Additionally, a trustee is warranted because Landcraft grossly mismanaged the affairs of the debtors. Gross mismanagement is manifest when "creditors may reasonably lose all

confidence in the ability of management to direct the reorganization effort." 7 Collier on Bankruptcy ¶ 1104.02[3][c][i] (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. Rev. 2007). Landcraft's pattern of mismanagement has continued throughout these cases. Mr. Neal established that Landcraft commingled funds by transferring money earmarked for specific debtors into a single bank account and then disbursing the funds to other Subdivisions. The record further reflects Landcraft's neglect in maintaining the premises of at least two of the Subdivisions and its incapacity to manage the Subdivisions with just five employees.[1] In addition, Landcraft is a debtor in Chapter 7 bankruptcy as the result of an involuntary petition filed on November 7, 2008. Furthermore, it is evident from the record that in the majority of these cases construction lenders are unwilling to provide additional financing toward the completion of the Subdivisions. As a result, there is no significant plan for most cases to go forward. In summary, Landcraft has lost almost all credibility with Investors, construction lenders, and this court.

Based on the foregoing, the court finds that cause exists for the appointment of a trustee. Therefore, the Committee's motion is ALLOWED. The Bankruptcy Administrator shall appoint a single trustee for all of the debtors.

"END OF DOCUMENT"

---

[1] See In re The Heights Subdivision, LLC, Case No. 08-06502-8-JRL, 4-5 (E.D.N.C. Feb. 12, 2009) (an expert witness in soil erosion testified that the erosion control issues exhibited at The Heights and Kelsey Glen were the worst she had ever seen.)